UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD WEAN,

              Plaintiff,

vs.                         Case No.  2:11-cv-276-FtM-99DNF

TIM BUDZ,

              Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court upon review of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #20, Motion), filed July 17, 2012.  Plaintiff filed a response (Doc. #21, Response) in opposition to Defendant's Motion.  This matter is ripe for review.

**I.**

Richard Wean, who is civilly detained at the Florida Civil Commitment Center (hereinafter "FCCC") pursuant to Florida's Involuntarily Civil Commitment of Sexually Violent Predator's Act, §§ 916.31-916.49, Florida Statutes, initiated this action by filing a pro se Civil Rights Complaint pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding on his Second Amended Complaint (Doc. #13, Second Amended Complaint).  The Second Amended Complaint alleges a substantive due process claim under the Fourteenth Amendment based on the FCCC's "black box policy" against Defendant Timothy Budz, the director of the FCCC.  See generally Second Amended Complaint

at 1. Plaintiff states that pursuant to the FCCC policy, he is required to wear a black box[1] over his handcuffs on every trip outside of the FCCC. Id. at 5. Plaintiff claims that the black box limits the movement of his hands and causes the steel handcuffs to dig into his hands, which causes him "great pain" "for hours at a time." Id. at 6. Plaintiff further alleges that he has developed numbness in his hands as a result of wearing the black box. Id. Plaintiff seeks "damages to be decided." Id. at 7.

Defendant Budz seeks dismissal of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendant argues that the Court should dismiss this action because the Second Amended Complaint does not include any facts supporting Plaintiff's conclusion that he suffered harm as a result of wearing the black box. Motion at 4. Nor does the Second Amended Complaint provide the dates, times, destinations, or duration of any transports where Plaintiff was required to wear the black box. Id. Defendant also argues that the Court must dismiss the action because the use of the black box is not ipso facto unconstitutional as it does not affect any protected liberty interest under the Due Process Clause. Id. at 4-5. Defendant asserts that the use of the black box falls squarely within Budz' professional judgment as to the well being of

_____

[1]The parties describe the black box as follows: a rectangular device measuring approximately four inches by three inches that is placed over a pair of handcuffs and limits hand movements and restricts access to the handcuff's key holes.

the Plaintiff or other individuals who may come in contact with the
FCCC's other detainees who are sexually violent offenders. Id. at
7.

In Response, Plaintiff explains that he cannot provide the
dates, times, destination, or duration of the relevant transports
because that information is in the exclusive control of the
Defendant. Response at 2. Plaintiff further argues that he has a
liberty interest in freedom from bodily restraint, which the black
box violates and causes him pain. Id. at 6. Consequently, the
Court construes the Second Amended Complaint as challenging the
FCCC policy that permits the use of the black box and not
challenging any particular time that the black box was used on
Plaintiff as improperly applied.

## II.

In deciding a Rule 12(b)(6) motion to dismiss, the Court
limits its consideration to well-pleaded factual allegations,
documents central to or referenced in the complaint, and matters
judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d
840, 845 (11th Cir. 2004). Thus, the Court must accept all factual
allegations in Plaintiff's Complaint as true and take them in the
light most favorable to the plaintiff. Pielage v. McConnell, 516
F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however,
are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556
U.S. 662, 129 S. Ct. 1937, 1951 (2009)(discussing a 12(b)(6)

dismissal); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss. Randall v. Scott, 610 F.3d 701, 708, fn. 2 (11th Cir. 2010). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Marsh, 268 F.3d at 1036 n.16. Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Ashcroft, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1968-69 (citations omitted)

(abrogating <u>Conley</u>, 355 U.S. 41 in part).  Additionally, there is no longer a heightened pleading requirement.  <u>Randall</u>, 610 F.3d at 701.  Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed.  <u>Hughes v. Lott</u>, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998)).

### III.

Plaintiff filed this action as a civil detainee confined at the FCCC pursuant to the State of Florida's Involuntary Commitment of Sexually Violent Predator's Treatment and Care Act ("SVP Act").[2] <u>See generally</u> Fla. Stat. §§ 394.910-.913.  As a person who is civilly committed, Plaintiff is in a position analogous to a criminally confined prisoner.  <u>See Pullen v. State</u>, 802 So. 2d 1113, 1119 (Fla. 2001) ("the curtailment of the fundamental liberty right is implicated in both criminal proceedings and involuntary civil commitments").  Nevertheless, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable

---

[2]The Court takes judicial notice of Plaintiff's prior convictions: (1) armed burglary, (2) kidnaping of a victim under age 13 and aggravated child abuse, (3) sexually battery with a weapon or force, (4) lewd and lascivious assault on a child under the age of 16, (5) armed burglary, (6) kidnaping of a victim under the age of 13, (7) and sexually battery with a weapon.  <u>See</u> www.dcstate.fl.us

training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). Thus, while residents at the FCCC who are civilly committed are "totally confined" and subject to internal regulations much like those established by the Florida Department of Corrections,[3] they are due a higher standard of care than those who are criminally committed. See Id. Indeed, the Eleventh Circuit Court of Appeals has held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id.

A criminally confined prisoner, has an Eighth Amendment right to be free from cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 318-19 (1986). As the rights of the involuntarily civilly committed are "at least as extensive as the rights of the criminally institutionalized," actions which would violate the Eighth Amendment rights of a prisoner, would likewise constitute a violation of the due process rights of an individual who was been involuntarily civilly committed. See Dolihite, 74 F.3d at 1041. The Eleventh Circuit has recognized that "relevant case law in the Eighth Amendment context also serves to set forth the contours of

_____

[3]See Fla. Stat. § 394.912(11).

the due process rights of the civilly committed." Id.; see also Lavendar v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006).

IV.

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Here, Defendant does not dispute that he is a state actor and Plaintiff alleges a violation of his substantive due process rights stemming from the use of the black box during his transportation to and from the FCCC. See Second Amended Complaint.

"In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.'" Youngberg, 457 U.S. at 320 (citations omitted). In seeking this balance, the Court weighs the individual's interest in liberty against the State's reasons for restraining that individual liberty. Id. The United States Supreme Court has upheld restrictions of liberty when they are "reasonably related to

-7-

legitimate government objectives and not tantamount to punishment." Id. (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). The United States Supreme Court has recognized that not every restriction imposed during confinement constitutes "punishment." See Wolfish, 441 U.S. at 537. When determining whether a particular restriction amounts to punishment under the Due Process Clause, the court must determine whether the restriction is incident to a legitimate governmental purpose or whether the restriction is imposed as punishment. See Id. at 538. Absent an institution's expressed intent to punish a detainee, this determination "generally will turn on whether there is an alternate purpose rationally connected to the restriction," and whether the restriction appears excessive based on the alternate purpose supporting it. Id. In other words, if a condition or restriction is "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539-40. However, if it "is not reasonably related to a legitimate goal- if it is arbitrary or purposeless- a court may infer that the purpose" is punishment. Id. at 539. In determining whether restraints are reasonably related to an institution's interest in maintaining security and order, the Court is mindful of the Supreme Court's warning that

> [s]uch considerations are peculiarly within
> the province and professional expertise of
> corrections officials, and, in the absence of
> substantial evidence in the record to indicate
> that the officials have exaggerated their
> response to these consideration, courts should

-8-

> ordinarily defer to their expert judgment in
> such matters.

Id. at 540, n. 23 (citations omitted).

Here, Plaintiff attributes liability on Defendant Budz for setting forth a policy directing the use of a black box during transport. This transport policy applies to all FCCC residents. While this Court recognizes that civilly detained persons are entitled to freedom from bodily restraint under the Fourteenth Amendment, the Court also recognizes that this right is not without restriction. The Court is persuaded by precedent from the Seventh Circuit Court of Appeals finding that use of a black box on a sexually violent predator during transport did not implicate liberty interests under the Fourteenth Amendment because the black box did "not pose an atypical or significant hardship; rather it constitutes an 'additional restriction[] . . . too limited to amount to a deprivation of a constitutional liberty." Levi v. Thomas, 429 F. App'x 611, 613 (7th Cir. 2011)(finding "if the black box restraint does not affect any protected liberty interest; Levi's substantive due process claim must therefore likewise fail."). In summary, the use of the black box is not considered "punishment" under constitutional standards. See also Walker v. Saddler, Case No. 11-cv-3056, 2013 WL 5017780 * 2 (C.D. Ill. Feb. 8, 2013)(dismissing substantive due process claim filed by a plaintiff who was civilly detained as a sexually violent predator

challenging use of black box during transport based on Levi).
Assuming arguendo that Plaintiff does have a liberty interest in
not having the black box applied during transport, Defendant has
articulated a reasonable basis for use of the black box--
specifically the well being, or the security, of Plaintiff and
others that come in contact with him.   Jackson v. Cain, 864 F.2d
1235, 1243 (5th Cir. 1989)(recognizing that handcuffs and other
restraining devices constitute a rational security measure and
cannot be considered cruel and unusual punishment unless great
discomfort is occasioned deliberately as punishment or mindlessly,
with indifference to the prisoner's humanity).

        Plaintiff does not allege that the black box was applied
maliciously or improperly for the purpose of causing him pain.
Plaintiff does claim that the black box cause him pain.   Second
Amended Complaint at 6.   However, Plaintiff only names the director
of the FCCC as the sole Defendant and does not name the individuals
who applied the black box to him.   The Supreme Court has soundly
rejected the possibility of respondeat superior as a basis of
liability in § 1983 actions.   Monell v. Dep't of Soc. Serv., 436
U.S. 658, 690-692 (1978).   Supervisory liability can be imposed
under § 1983 "either when the supervisor personally participates in
the alleged constitutional violation or when there is a causal
connection between the actions of the supervising official and the
alleged constitutional deprivation."   Brown v. Crawford, 906 F.2d

-10-

667, 671 (11th Cir. 1990). The Second Amended Complaint contains no factual allegations suggesting that Defendant Budz personally applied the black box to Plaintiff. Absent personal participation by Defendant Budz, Plaintiff must show an affirmative causal connection between his acts and the alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. Cottone, 326 F.3d at 1360 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted). Plaintiff does not allege that Budz directed that the black box be applied in such a manner to cause pain. In fact, the Second Amended Complaint contains no allegations that Plaintiff ever told anyone that the black box caused him pain.

-11-

ACCORDINGLY, it is hereby

**ORDERED**:

1.  Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #20) is **GRANTED**.

2.  The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Orlando, Florida, on this _____ day of February, 2013.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

SA: alj

Copies: All Parties of Record

-12-